St. Louis Southwestern Railway Company *v.* Arkadelphia Milling Company.

Opinion delivered November 8, 1915.

1. Sales—title to chattels shipped—demurrage—question for jury. —In an action by a carrier to collect demurrage charges, the issue of the ownership of the freight against which the charges were assessed, *held* a question for the jury.

2. Carriers—service to shippers—spur track—discrimination between shippers.—A carrier may offer certain shipping facilities to certain industries located on its own line in a city, which it may deny to the general shipping public, and such special service is outside its ordinary duty as a common carrier. ·

3. Carriers—shipping facilities—discrimination.—Under Kirby's Digest, § 6722, which provides that no unjust or undue discrimination shall be made in charges for or in facilities for the transportation of freight or passengers within the State, there can be no unjust or undue discrimination between shippers that are not similarly situated, so long as a like service is extended to shippers who are in the same or like situations.

Appeal from Clark Circuit Court; *G. R. Haynie,* Judge; reversed.

Appellant instituted this suit against the appellee to recover for demurrage on two certain cars, and unloading one of said cars, the amount of $33. The answer denied liability and set up, in part, as follows:

"That one L. L. Hamlin had a contract with this defendant to deliver it a large number of staves and was manufacturing said staves near the Ouachita River north of Camden; that he shipped a large quantity of these staves by boat to Camden, Ark., and unloaded them on a wharf near the tracks of the plaintiff railroad company, and that he delivered alongside of plaintiff's railroad track and loaded a number of cars of said staves. But, that after the cars named in plaintiff's complaint had been placed at a point near where the staves had been delivered along the track of plaintiff and the said cars loaded, the plaintiff refused to move said cars or to deliver them to the Iron Mountain railroad or to any other railroad to be carried to this defendant, but allowed said staves to remain on said cars on its track for more than thirty days, and finally unloaded the same by throwing them out on ends in the mud and damaging them."

The facts are substantially as follows: Appellee and one L. L. Hamlin entered into a contract by which Hamlin sold to appellee a million white oak staves. Some of these staves had been manufactured, and others were in process of manufacture by Hamlin with machinery furnished him, rent free, by appellee. The staves were to be delivered to appellee f. o. b. cars Iron Mountain Railway Company at Camden or Lester, Arkansas. The mill at which Hamlin was manufacturing the staves was situated about fourteen miles north of Camden, on the Ouachita River. Hamlin manufactured a large number of staves and shipped them to Camden by river and unloaded them at a point along the track of appellant known as the "River track," for shipment over appellant's line of road. This track was also known as the "Team track." Along this track cars were placed by the appellant to be loaded with freight to be shipped in carload lots. Also

loaded cars were placed on this track to be unloaded. This track extended some three or four hundred yards farther from the point Hamlin's staves had been placed than where cars were ordered for the purpose of being loaded from wagons to a stave plant on this track owned by the National Cooperage Company. The cooperage company was engaged in the manufacturing and shipping of staves and this team track of appellant was used by the cooperage company for shipping in and shipping out its staves.

Hamlin applied to the appellant's station agent at Camden for cars in which to ship his staves. Cars were placed by appellant on this track and were loaded by Hamlin. After the same were loaded, Hamlin, or his agent, would fill out a bill of lading and take it to the agent at Camden who would execute it and ship the cars out in accordance with the bill of lading. This continued until about eight cars of staves had been shipped out, going to various points in the United States. The last two cars loaded were the cars on which the demurrage in controversy was claimed. Bills of lading were filled out by Hamlin, naming the Arkadelphia Milling Company, at Arkadelphia, as the consignee. The appellant had no line of railroad from Camden to Arkadelphia. The Iron Mountain has a line of railroad from Camden to Arkadelphia, and appellant's railroad track connects with the tracks of the Iron Mountain Railway Company, at a point in or near Camden, about a mile from where the staves were loaded in the two cars in controversy. Appellant's agent was requested to execute bills of lading and haul the two cars onto the Iron Mountain tracks, to be delivered by that railroad to the Arkadelphia Milling Company at Arkadelphia, but appellant's agent refused to execute the bills of lading and refused to haul the cars to the Iron Mountain tracks. The plant of the cooperage company was only two or three hundred yards below where these two cars were loaded, and on the same track. That company did a much larger

business than Hamlin, but it was engaged in the same kind of business.

Appellant furnished cars to the cooperage company for loading staves into, and after they were loaded hauled them along this team track and delivered them to the Iron Mountain Railroad to be shipped to Arkadelphia or other points along the line of that road. After appellant's agent had refused to ship the two cars on which this demurrage was claimed they were allowed to remain standing on its track, one for twenty-three days, and the other for seven days, and after appellant had refused the request of Hamlin to deliver the cars to the Iron Mountain, Hamlin asked the manager of appellee to assist him in getting appellant to deliver the cars. Appellee's manager called appellant's agent at Camden by telephone and tried to induce him to deliver the cars, but he refused; and the staves in one of the cars were by Hamlin unloaded into wagons and hauled by wagon to the Iron Mountain tracks. The staves in the other car were thrown out by appellant's employees and were damaged by being thrown in the mud and allowed to remain there for some time.

Appellee insisted at the trial that these cars were not ordered by it from appellant; that the staves were not its staves, but were the property of Hamlin, and that the same had not been delivered to appellee in accordance with its contract with Hamlin. It further contended that appellant, in hauling cars loaded with staves from the cooperage company on this river track and delivering the same to the Iron Mountain Railway Company, and in refusing to perform the same service for Hamlin was discriminating in favor of the cooperage company, in violation of law, and that for that reason appellant was not entitled to recover.

After the evidence was adduced, the court directed a verdict in favor of the appellee, as follows: "The court finds that under the evidence, the refusal of the plaintiff company to switch the two cars of staves in question was wrongful, because, in view of the evidence it amounted to a discrimination against the defendant, or others simi-

larly situated. The court further finds that the rule of the plaintiff company not to switch cars from its tracks in Camden, Arkansas, to the transfer track of the Iron Mountain line was a reasonable rule and regulation, and, if applied to all persons alike, would be valid.''

The appellant excepted to this ruling of the court, and duly prosecutes this appeal.

*Edward A. Haid* and *Gaughan & Sifford,* for appellant.

1. There was no discrimination within the meaning of the law. 212 U. S. 132; 12 L. R. A. (N. S.) 506; 112 Ark. 147; 55 L. R. A. (N. S.) 250 and notes.

*McMillan & McMillan,* for appellee.

1. Appellee did not own the staves nor order the cars, nor use them. 83 Ark. 395; 72 *Id.* 142.

2. There was discrimination within the law. Kirby's Dig., § § 6804, 6827-8-9-30, etc.; Acts 1907, p. 402; 95 Ark. 249-252.

Wood, J., (after stating the facts). (1) The appellee contends that the undisputed evidence shows that the appellee was not the owner of the staves on which the demurrage is claimed until the staves had been delivered to it on board the cars of the St. Louis, Iron Mountain & Southern Railway Company at Camden, or Lester, Arkansas. Under the evidence, this was a question of fact for the jury, and not one of law for the court. There was testimony on behalf of the appellant from which a jury would have been warranted in finding that the appellee had waived the provision of the contract with Hamlin requiring him to deliver the staves f. o. b. cars of the Iron Mountain at Camden or Lester, and had accepted the staves when loaded on appellant's cars on its river track. There was considerable testimony bearing on this issue, which it could serve no useful purpose to set forth. Suffice it to say that the appellant was entitled to have this issue submitted to the jury.

The only remaining question is as to whether or not the court erred in holding that the refusal of the appel-

lant to switch the two cars of staves in controversy was such an unjust discrimination against the appellee as to prevent the appellant from recovering judgment for the demurrage claimed, conceding that such demurrage was due appellant by the appellee.

On behalf of the appellant there was testimony tending to show that the spur track on which the cars in controversy were placed was not put in for the purpose of receiving freight from boats or barges on the river; that it was put in as an industrial track for the National Cooperage Company, whose plant was situated about 300 yards from the landing on the river. It was shown that the appellant had a switching arrangement for industries located on its line, or reached by its connections. Appellant introduced its tariff No. 3381, which provided as follows: ''The rates of switching provided in the tariff are for services within yard limits, and apply only in the case of through shipments from or to Camden, Arkansas. No rates are provided for what may be designated as 'Local Town Switching,' and we will not undertake to perform such switching service.  Switching performed by St. Louis S. W. Ry.''

It was shown that under this regulation appellant switched through carloads to and from industries located on or reached by its own rails or its connection with the St. Louis, Iron Mountain & Southern Railway at the rate of $2 per car, but that it did not switch for its connection with the St. Louis, Iron Mountain & Southern Railway carloads to its public loading and delivery track, nor did it place cars for loading on such public loading or delivery track for shipment *via* the St. Louis, Iron Mountain & Southern Railway.  It provided this river track for its own exclusive use.

A witness testified that where appellant switched a car for the St. Louis, Iron Mountain & Southern Railway to an industry or warehouse located on or reached by its track for partial loading and the car is returned to the St. Louis, Iron Mountain & Southern Railway with the remainder of the load, the regular switching charge will

be assessed for switching each way, on the same principle that appellant charged for a loaded car in and a loaded car out as per its rule. Where a car was placed to load for forwarding by the St. Louis, Iron Mountain & Southern Railway and the shipper ordered an additional move or moves to complete the loading, a switching charge of $2 per car was assessed for each move after the original placing, under its tariff regulations. The witness then explained that under its tariff appellant could switch for the National Cooperage Company, because it was an industry having its plant located on appellant's spur track, but that it could not, under its tariff regulations, switch cars from its team or house track to the Iron Mountain track except for industries located on its line. Staves which came in by boat and were unloaded at the wharf and then hauled to appellant's river or team track, and there loaded on cars to be shipped over the Iron Mountain would not be switched by the appellant from its river track to the Iron Mountain track without a charge for switching under its tariff rates; that freight which came in by water, going to points on appellant's own line or connections, appellant would carry at the regular tariff rate, but would not do town switching that goes to the Iron Mountain; that was the drayman's business.

The court was in error in holding that because the appellant made a distinction between shippers not having industries located on its spur or team track, and those who did have industries thus located, that it was guilty of unjust discrimination which would prevent its recovery in this suit.

(2) Now, the appellee did not have any plant for the manufacture of staves situated on appellant's river or spur track. The National Cooperage Company did have such a plant. The service in the way of spur track facilities which the appellant offered to industries located on its own line at the city of Camden was a service which it was not bound to render all shippers who might offer articles for shipment at points along this spur track. This extra inducement to have industries located along appel-

lant's line was in the sphere of legitimate enterprise to increase its own business, and this service was outside of its ordinary duties as a common carrier.

(3)  Under the statute providing that no unjust or undue discriminations shall be made in charges for or in facilities for transportation of freight or passengers within the State (Kirby's Digest, section 6722), there can be no unjust or undue discrimination between shippers that are not similarly situated so long as a like service is extended to shippers who are in the same or like situation.  *Little Rock & Fort Smith Ry.* v. *Oppenheimer,* 64 Ark. 271.  If appellee had had a plant located on appellant's river or spur track at Camden, and the appellant had not given to the appellee precisely the same service that it gave to the National Cooperage Company in the way of facilities and charges for the transportation of freight, then appellee's contention would be sound.  But, as appellee had no such plant upon appellant's river track, it was not discriminated against because appellant allowed the National Cooperage Company the facilities of its river or spur track, but would not allow these facilities to other shippers or allow their use to other shippers, not in the same situation, upon different terms than those imposed upon the National Cooperage Company.

Learned counsel for the appellee insist in their brief "that these two carloads of staves were loaded at the Cotton Belt freight station at Camden, a point in Arkansas, and the appellant was requested to issue a through way-bill and ship them to Arkadelphia, another point in Arkansas, and from appellant's station at Camden to the station at Arkadelphia there was a continuous line of railroad, all of it within the State of Arkansas."  But we do not so understand the facts.  The two cars of staves in controversy were not loaded at the Cotton Belt freight station at Camden.  Appellee's answer and the uncontroverted evidence shows that the cars "named and mentioned in plaintiff's complaint had been placed at a point in or near Camden on appellant's river or spur track about a mile from appellant's freight station."

It was the contention of appellee that appellant had to issue its through way-bill and ship these cars from this point where they were loaded on its river track, through by way of its spur track connecting with the Iron Mountain, to Arkadelphia, the same as it would a shipment of staves for the National Cooperage Company loaded on cars at its plant on the river track. But, as before stated, the two shippers not being in the same situation, appellant did not have to give the appellee the same advantages of its spur track connection with the Iron Mountain that it did the National Cooperage Company as to shipments originating on its river track where the cooperage company's manufacturing plant was located.

The case would have been quite different, for instance, if the National Cooperage Company had offered to appellant's road shipments that did not originate on the line of appellant's river track, on which the plant of the National Cooperage Company was situated. As to such shipments the cooperage company would be in the same situation as shipments offered by appellee at appellant's freight depot at Camden. Under the facts of this record appellant can not invoke the provisions of sections 6829 and 6830, Kirby's Digest. These sections provide in substance that:

In all cases where there is by physical connection a continuous line of railway communications between railroad stations within this State, whether such stations be on railroads operated by one and the same company or corporation or on railroads operated by different and independent companies or corporations, it shall be the duty of the Railroad Commission of this State, to and from such stations, to make just and reasonable rates of freight, to be observed by all persons, companies or corporations, operating any railroad or engaged in transporting persons or property or freight in this State, and that all freight carried while within this State, to and from stations on a line of continuous carriage, shall be way-billed through at through rates, and if the connecting lines fail to agree upon a division of the charges the com-

mission shall make the division fixing the pro rata part that each connecting line shall receive.

These provisons have no application here. In the recent case of *St. Louis, I. M. & S. Ry. Co.* v. *State,* 112 Ark. 147, we held: "A railway company will not be held to have discriminated in favor of one shipper and against another when by reason of the location of the tracks of another railway company it is able to furnish switching facilities free to the first shipper, but, because of different conditions, makes a charge for switching to the other shipper." That is the principle that must rule the instant case. See, also, *Louisville & Nashville Rd. Co.* v. *Central Stock Yards Co.,* 212 U. S. 132; *Yazoo & Miss. Valley Rd. Co.* v. *G. Y. Crawford,* 55 L. R. A. (N. S.) 250, and note; *State ex rel. Ellis* v. *Atlantic C. L. R. Co.,* 12 L. R. A. (N. S.) 506, and note on the subject of discrimination.

For the error of the court in directing the jury to return a verdict in favor of the appellee, the judgment is reversed and the cause is remanded for a new trial.