## HOLT v. KIRBY.

Opinion delivered February 4, 1893.

1. *Usury—Broker's commission.*

  A commission paid to a broker who, upon the application of the borrower, negotiated a loan of money at the highest legal rate of interest, will not render the loan usurious where there was no evidence that the broker was acting as the lender's agent in procuring the loan, aside from the mere fact that the broker examined the title, recommended the loan and prepared the note and mortgage.

2. *Burden of proof—Usury.*

  The burden of proof is on the party who pleads usury.

Appeal from Faulkner Chancery Court.

DAVID W. CARROLL, Chancellor.

*J. H. Harrod* for appellants.

The evidence shows that the Arkansas Loan and Trust Co. was the agent of Kirby, the borrower, and the payment of the $20 commission did not make the loan usurious. 51 Ark. 534; *ib.* 548; 54 *id.* 573.

*E. A. Bolton,* for appellee.

51 Ark. 546 settles this case. The proof shows that the company was the agent of the lender. 46 Mich. 393 ; 51 Ark. 534.

HUGHES, J. This is an appeal from a decree of the chancery court of Faulkner county cancelling a mortgage, on the finding by the chancellor that it was made to secure a usurious loan of money made by Helen M. Norton to the appellee upon his application, made through the Arkansas Loan and Trust Co., on the 24th day of March, 1883.

The complaint was filed on the 25th of September, 1888, and alleges that appellee applied to said company for a loan of four hundred dollars, and that the said company demanded that he execute his note for that amount bearing ten per cent. per annum interest from date till paid, which he did, and that he was paid by the company only $380 ; that the sum of twenty dollars was kept out and retained as a bonus, with the corrupt intent to take more than ten per cent. per annum for the use of said money ; that Helen M. Norton had assigned the note and mortgage given for the said sum of four hundred dollars to Nelson Holt, who was proceeding to foreclose by sale, etc.

The defendants filed an answer denying that the transaction was usurious, and a cross bill praying for foreclosure of the mortgage.

It is contended by the appellees, that in making the loan the Arkansas Loan and Trust Company acted as the agent of Mrs. Norton and not as the agent of R. R. Kirby.

The application for the loan was in writing, and states that the applicant made the company his agent, and agreed to pay it a commission to be agreed upon for negotiating the loan for him. The company was a corporation organized, under the laws of Arkansas, for the

purpose of negotiating loans. R. R. Kirby testified in substance, that, on the 21st day of March, 1883, he and his wife executed a note for $400 due two years after date, payable at the Merchants National Bank, Little Rock, Arkansas, with interest at ten per cent, payable · semi-annually, and executed the mortgage in controversy to secure the payment; that, about a week afterwards, he applied to L. W. Coy, the treasurer of the company, to get the money; that Coy would not give him the money until he procured his brother, S. B. Kirby, to endorse his note; that he expected to get $400, but was only paid $380; that Coy kept $20 of the amount, and said it was customary; that Coy said also that, if he had not procured his brother's endorsement, he would have had to furnish an abstract of the title to the land mortgaged, which would have cost him $15 or $20; that he said to Coy, when he got the money, that he thought he was getting it from the Arkansas Loan and Trust Company, and asked him who Norton was, and that · Coy said, it did not make any difference who Norton was, so he got the money; that Coy said, the $20 kept by him was a customary charge for the use of the money in addition to the ten per cent interest.

Coy testified in substance that the company acted as the agent of R. R. Kirby, and procured the loan for him of H. M. Norton; that, "in all transactions in connection with the procuring of this loan, the Arkansas Loan and Trust Company was the agent of R. R. Kirby, and was not the agent of either Holt or Norton"; that Kirby alone paid the company its compensation for its services in the matter of the loan, and that neither Norton nor Holt paid any part of it, and never agreed to do so; that the amount H. M. Norton loaned Kirby was $400; that when Kirby made the application, the company made examination and found H. M. Norton was willing to make the loan; that the money was not the money of the

Arkansas Loan and Trust Company. That, at the time Kirby obtained this loan, H. M. Norton had no money deposited with the Arkansas Loan and Trust Company for the purpose of being loaned; that when Kirby made the application, the company did not know where it would place the loan, but afterwards succeeded in placing it with Mrs. Norton, who lived in Little Rock, with whom the company had no independent contract that it would guarantee the note; that the company had no funds of its own that it expected to loan; that it expected to get the money from other parties; that he thought Mrs. Norton saw the application, but could not say certainly that she did; that there was no understanding between Mrs. Norton and him; that the company were to collect the note for her; that if he saw her, he recommended the loan to be good; that the board of directors of the company would not recommend the loan, unless S. B. Kirby would endorse the note. That parties lending money through the company often depended upon the judgment of the company as to the security offered, and that Mrs. Norton may have done this, but as to this he could not say. That the company, in justice to itself, would not try to procure a loan upon an application, unless the security offered was in its judgment good; that this is what he means by passing upon the security; that the company sometimes collected such notes simply as a matter of convenience and to facilitate its own business; that it was the practice of the company to prepare the note and mortgage for such a loan; that the compensation paid by Kirby was agreed to before his application was received. That the company employed attorneys for Mr. Holt, he having sent the note here for collection. The application for the loan contained the following statement: "I hereby appoint the Arkansas Loan and Trust Company, or any substitute by them chosen, my agent to procure for me a loan of

four hundred dollars. I do hereby promise to pay the said company, or any substitute by them selected as my agent, such sum as may be agreed upon as compensation for services rendered me in procuring this loan for me," etc.

The only question in the case is, does the preponderance of the evidence show that the Arkansas Loan and Trust Company acted as the agent of H. M. Norton in making the loan? If it did, then, under the decisions of this court, the transaction was usurious, and the decree was right. But if the company, in negotiating the loan, acted as the agent of Kirby, then the transaction was not usurious.

*1. Loan not usurious because of broker's commission, when.*

In the first place, Kirby in his written application purported to make the company his agent to procure the loan, and the services rendered by the company in passing upon the security offered, and in drawing the note and mortgage, though beneficial to Mrs. Norton, who paid nothing for them, appear to have been performed before the application for the loan was made to her, for the convenience and to facilitate the business of the company.

It is not made to appear that Mrs. Norton had been in the habit of lending money through the Arkansas Loan and Trust Company, or that they had ever had similar transactions to this one with her, or that she had any money on deposit with the company to loan. It is easy to distinguish this case from *Thompson* v. *Ingram*, 51 Ark. 546 and *Banks* v. *Flint*, 54 Ark. 40. In the former of these cases there was no question that the broker was made the agent of the lender; and in the latter, the long course of dealing between the mortgage company and the Corbin Banking Company, the great number of loans made by the latter for the former, and the fact that the former had done twenty-five twenty-sixths of its business through the latter, and the circumstance that the former was making loans in a State far distant from its domicil,

without, as it was insisted, an agent to represent it, with the other circumstances in the case, made it conclusive that it was doing business in negotiating the loan in that case through the Banking Company acting as its agent. We can well understand how a broker engaged in negotiating loans for commissions to be paid him would do many things in ascertaining the character of the security to be offered through him, and in seeing that every thing connected with a transaction of the kind was in proper shape, for his own benefit, to build up or maintain a fine business reputation. Though these things might all be such as the lender ought to do or have done, and though they may be very beneficial, and even necessary to protect the interest of the lender, and though the lender may avail himself of them without compensation to the broker, yet if they are not rendered for the lender, they do not make the transaction usurious, though the amount paid to the broker would make more than ten per cent. on the amount obtained upon the loan. What the borrower may pay his agent to procure a loan for him does not affect the lender. It is the contracting to take more than ten per cent. per annum interest by the lender or his agent that makes the agreement usurious.

2. Burden of proof as to usury.

It is aptly stated in *Banks* v. *Flint*, 54 Ark. *sup.*, that, "to sustain the plea of usury, it must appear that excessive interest was paid to the lender, or that a bonus or commission was paid to the agent of the lender with his knowledge, or under circumstances from which his knowledge will be presumed, which commission, when added to the interest paid or to be paid the lender, would exceed the lawful rate."

The burden of proof is on the party who pleads usury to show clearly that the transaction is usurious.

It is the judgment of this court that the evidence in this case does not clearly establish the plea of usury.

The judgment is therefore reversed, and the cause is remanded to the chancery court with instructions to render a decree foreclosing the appellant's mortgage.