BANK OF NEWPORT *v.* COOK.

Opinion delivered February 23, 1895.

*Usury—Discounting negotiable paper.*

> The taking of the highest legal rate of interest in advance on negotiable paper having twelve months to run is not usury.

Appeal from Woodruff Circuit Court in Chancery.

GRANT, GREEN, JR., Judge.

*Rose, Hemingway & Rose* and *J. W. & J. M. Stayton* for appellant.

1. A charge for exchange, unless used as a cover for usury, is legal, and not usury.  Tyler, Usury, p. 143; Boone, Banking, sec. 29.  Appellees paid less than they would have paid had they have executed *short* paper, renewing every ninety days.  2 Gratt 372; 1 Stew. (Ala.) 442; 6 Mass. 52; 3 Pet. 36.

2. The assertion in 51 Ark. 535 that reserving interest in advance on long time paper is usury is mere *dictum*.  The paper in that case and in 51 Ark. 548 were three-months paper.  The language of constitutions is construed, not according to its technical meaning, but according to the acceptation of those who adopted it, in view of previous existing laws and the prior construction of the courts.  51 Ark. 535.  It has long been settled that the reserving interest in advance on discounting

commercial paper is not usury. Tyler, Usury, 155; 1 Morse on Banks, sec. 50; Perley on Int. p. 224; Boone on Banking, sec. 77; 2 Blackstone, Rep. 793; 2 Gratt. 372; 6 Mass. 52; 12 Pick. 586; 15 Johns. 162–168; 2 Cow. 664; 4 Wend. 652; 30 Hun, 201; 8 Wheat. 338; 141 U. S. 399; 7 Kas. 405; 54 N. W. 129; 53 N. W. 410; 10 Neb. 541; 2 Carter (Ind.), 631; 34 Ind. 116; 7 Rob. (La.) 539; 4 Scam. (Ill.) 21; 31 Ill. 491; 77 Ill. 526; 110 Ill. 235; *Ib.* 390; 132 *id.* 550; 4 Ark. 592; 5 *id.* 59; *Ib.* 193; 22 *id.* 414. 22 Ark. 414 was overruled by 51 Ark. 535, so far as it held that individuals did not have the rights of banks to discount paper. There must be an intention knowingly to contract for and take usury. 25 Ark. 195; *Ib.* 260. There is no evidence of a corrupt intent in this case.

*J. W. House* for appellees.

The contract, as made, is usurious. 2 Cow. (N. Y.) 704–5, 769, 779. The cases cited by appellant (4 Ark. 592; 5 *id.* 59; *Ib.* 193) have no bearing on this case. Interest can only be reserved in advance on *short time* paper, 90 days at the longest, such as is the custom of banks to handle in the ordinary and usual course of business. Most of the cases cited by counsel sustain our contention. 4 Scam. (Ill.) 21; 1 Stew. (Ala.) 442, 468; 22 Ark. 413; 51 Ark. 535 settles this case. *Ib.* 542. See 16 S. E. 713; 2 Cow. (N. Y.) 704. If the limit is not upon *short time* paper, then where does it stop? If the highest rate can be reserved on one year paper, why not on two, three, four, five, six, seven, eight, nine, or even ten year paper? What would be the result? Take ten year paper, and the borrower would get nothing. Such cannot be the law. In order to constitute usury, it need not appear that the parties intended to violate the law; it is only necessary to show that one of the parties intended to reserve, and the other to pay, more than the

legal rate of interest.   41 Ark. 331 ; 50 N. Y. 437.   The plea of usury, like any other legal defense authorized by the statute, is entitled to the same respect as other defenses.   32 N. Y. 124.

HUGHES, J.   The question in this case is, does the taking in advance of the highest rate of interest allowed by the constitution upon a negotiable promissory note payable twelve months after its date constitute usury ?

The provision of the constitution upon the subject of usury is (article 19, sec. 13): "All contracts for a greater rate of interest than ten per centum per annum shall be void as to principal and interest, and the general assembly shall prohibit the same by law, but when no rate of interest is agreed upon, the rate shall be six per centum per annum."

The act of the legislature approved February 9, 1875, only a few months after the adoption of the constitution, upon the subject of discounting commercial paper, mortgages or other securities or other securities, is as follows: "It shall be lawful for all parties loaning money in this State to reserve or discount interest upon any commercial paper, mortgages or other securities at any rate of interest agreed upon by the parties, said rate not to exceed ten per cent per annum."   The only limitation in this act is upon the kind of paper, so far as it affects the case at bar, and that is that it shall be commercial paper.   In *Vahlberg* v. *Keaton*, 51 Ark. 534, this act is held to be constitutional when the paper discounted, or upon which interest is reserved, is three months paper, used in commercial transactions ; the question in that case having arisen upon, and necessarily been confined to, three months paper.   The act of the legislature, passed soon after the adoption of the constitution—in fact at the first session thereafter—though not obligatory if it violates the constitution, is entitled to serious consideration as a legislative construction of the above

provision of the constitution, and unless it is clear beyond reasonable doubt that it is in conflict with the constitution, it is the duty of the court to sustain it.

It is said, in *Vahlberg* v. *Keaton*, 51 Ark. *sup.*, in reference to the constitutionality of the above statute, that "it is also said to be a correct rule in constitutional interpretation to construe it, not according to its technical meaning, but according to the acceptation of those who adopted it.   *   *   It must be presumed that it was framed and adopted in the light and understanding of prior and existing laws, and with reference to them.   *   *   The statute of 12 Anne provided, in substance, that no person should take, directly or indirectly, for loan of money, etc., interest at a higher rate than five per cent. per annum; and that all contracts whereby there was reserved or agreed to be paid interest at a higher rate should be utterly void.    The question came before the court of common pleas under this statute, and Sir William Blackstone conceived that interest may as lawfully be received beforehand for forbearing, as after the term is expired for having forborne.    *Lloyd* v. *Williams*, 2 Wm. Blackstone, 792." And this was followed in *Auriol* v. *Thomas*, 2 T. R. 52; *Marsh* v. *Martindale*, 3 B. & P. 154; and *Floyer* v. *Edwards*, 1 Cowp. 112. But " no shift will enable a man to take more than legal interest upon a loan."

So it is settled in our State that it is not usury, under our present constitution, to take interest in advance, and that the above act is valid, "so far as it relates to transactions of a commercial kind in short time paper." It is said, in the opinion in *Vahlberg* v. *Keaton*, 51 Ark. *supra*, that, "although this relaxation against the prohibition of usury was first sanctioned in the transactions of banks and other corporations authorized to make discount, a distinction could not be made against individuals, and it became universal; " citing 3 Pars. on

Cont. p.* 131 ; *Maine Bank* v. *Butts*, 9 Mass. 49 ; *Marsh*
v. *Martindale*, 3 B. & P. *supra* ; *N. Y. Firemen Ins.
Co.* v. *Ely*, 2 Cowen, 703 ; *Cole* v. *Lockhart*, 2 Carter
(Ind.), 631 ; *Parker* v. *Cousins*, 2 Grat. 373.

In the case of *Vahlberg* v. *Keaton*, 51 Ark. *supra*,
it is also said that "the clause of the constitution is no
broader in its terms, and seems to reach no further in its
purpose, than the act of 1838, the act of 12 Anne, or the
acts of the other States, upon the subject.   The fram-
ers of the constitution intended only to make the prohi-
bition against usury, as it had formerly been understood,
a part of the organic law, and not leave it to depend on
the discretion of the legislature, or the chances of party
ascendency.   Such being the purpose of the constitution,
and such the meaning given statutes embodying its
terms, by previous judicial construction, it follows that
it will receive the same construction placed upon the
similar statutes.   This conclusion receives support in
the fact that the legislature, meeting very soon after
its adoption, dominated by the purpose that controlled
in its adoption, and charged with the duty of carrying
it into effect, enacted the statute referred to."

We have quoted largely from the above case because
we consider it a well considered and sound opinion,
throwing much light upon the question under consider-
ation here, supported, as we find it to be, by the numer-
ous cases referred to in it.   It will be observed that the
opinion is confined to "short-time paper" and in "trans-
actions of a commercial kind."

The opinion does not undertake to define "transac-
tions of a commercial kind in short-time paper," because
it was unnecessary, for the paper was unquestionably of
that kind in that case, being three-months paper—a ne-
gotiable promissory note.   The statute above quoted
uses the term "commercial paper," and the note in the
case at bar was commercial paper—a negotiable promis-

sory note, payable in twelve months from its date, for $2500, and the interest $250 was taken out in advance, and only $2250 paid to the borrower.   Now, if this transaction was not usurious by reason of the length of time the note, out of which the interest was taken in advance, had to run, it was not usurious.   This is the only possible question in the case.   In the following cases taking interest at the highest legal rate in advance on six months paper was held not to be usurious, viz.: *Utica Ins. Co.* v. *Bloodgood*, 4 Wend. 652 ; *Bloomer* v. *McInerney*, 30 Hun, 201.   In the following cases the taking of the highest legal rate of interest in advance on one year paper was held not to be usurious, viz.: *Cole* v. *Lockhart*, 2 Carter (Ind.), 631 ; *Mitchell* v. *Lyman*, 77 Ill. 525 ; *McGill* v. *Ware*, 4 Scam. 21.   In the following cases the highest legal rate of interest was reserved in advance on paper having from twenty-three months to five years to run, and this is held not to be usurious, viz.: *Fleckner* v. *Bank of the United States*, 8 Wh. 338 (23 months); *English* v. *Smock*, 34 Ind. 116 (semi-annually in advance for five years); *Brown* v. *Mortgage Co.* 110 Ill. 235 (semi-annually in advance for five years).   See also *Hoyt* v. *Pawtucket Inst.* 110 Ill. 390 ; *Bacchus* v. *Moreau*, 7 Rob. (La.) 539 (semi-annually in advance for five years).

In *McGill* v. *Ware*, 4 Scam. (Ill.) 21, the court, after reviewing the cases in England and America upon this question, said : "I have reviewed these decisions to show that the first impression of the courts was that it was usurious to take interest in advance, as evidenced by the first *dicta* and decisions; and also that the courts very early decided it was not usury under the statutes of Henry VIII, and have followed up that decision uniformly down to this period, under all the English and American statutes.   Such a long course of uniform decisions for upwards of two hundred years ought to settle the question ; more particularly so with us, as

those decisions were made upon statutes precisely like our own as to the mode of reserving interest, and which were known before its passage. * * If the question were now new, and the business of the country not so deeply involved in transactions of the kind before named, I believe it would be differently ruled." The note discounted in that case had one year to run, and interest at the highest legal rate was taken out in advance, and, yielding to authority, the court held that it was not usury. The proof in the case at bar tends to show that it is customary, in the vicinity where this note was executed, to pay debts in the fall or winter season when the proceeds of the cotton crop can be realized ; and that notes for the payment of money are made in reference to this, for convenience of trade. And it may be supposed that the business of the country is largely involved by reason of this custom, which, in our judgment, ought not to be ignored in this opinion.

In *Fleckner* v. *Bank of the United States*, 8 Wh. 339, a note to the bank, dated the 26th of March, 1818, payable the 1st of March, 1820, was discounted for the full term it had to run by taking out, or reserving in advance, the interest at the highest legal rate allowed by law, and it was held that this was not usury. In discussing the question, Judge Story, who delivered the opinion of the court, said : "If a transaction of this sort is to be deemed usurious, the same principle must apply with equal force to bank discounts generally, for the practice is believed to be universal." He also said, in substance, that taking interest in advance is not usury in bankers or others.

It is so well settled that we deem it unnecessary to cite the numerous cases to show that it is the consensus of judicial opinion that it is not usury for a bank to discount commercial paper in the usual course of business by taking out the interest in advance, at the highest

legal rate, even in the absence of a statute allowing it; this being the universal custom, which has grown into law, and in reference to which the provision of our constitution upon the subject of usury is presumed to have been framed and adopted.

There are numerous decisions of courts of last resort in other States of the union which, in effect, hold that there is no distinction to be taken between discounting paper used in commercial transactions, whether it has a long or a short time to run.

In the early cases in England, discounting paper in advance was held to be usurious, without regard to the time it had to run; and the right to do so grew out of the custom of banks in commercial transactions, for the convenience of trade. The banks confined their discounts to paper having from 30 to 90 and sometimes 120 days to run; but it seems that, as the commercial transactions became more extended and numerous, and the necessities and convenience of different localities demanded, the custom widened and expanded to meet the growing and ever changing conditions of commerce and trade. As is shown by many decided cases in other States, the custom of discounting commercial paper having a year, and even more, to run was clearly recognized, and such transactions were held not to be usurious, where the highest legal rate of interest was taken in advance before the adoption of our constitution. As our constitution was adopted before this question had arisen in our State, or in this court, it is not a harsh presumption that the provision of the constitution above quoted was framed and adopted in reference to a custom well established in other States, and recognized as not in violation of laws similar to our own upon the subject of usury. It must be understood that the legislature thought so when the act above quoted was passed. It

cannot be presumed that the legislature intended to override the constitution.

It is easy to perceive the policy that might have controlled the legislature in passing the act quoted. Our people were an agricultural people almost exclusively. They were engaged in the production chiefly of cotton, the great staple of the South, which, as the proof shows, is marketed in the fall and winter seasons, and they were in the habit of making their obligations to fall due at a time of the year when they could realize upon their crops. Their general custom was to make their notes and obligations for the payment of money to become due in the fall and winter, and for the additional reason that it is more convenient and less troublesome to the borrower to borrow money on twelve months' time, and pay the interest in advance, than to borrow on three months' time, and renew every three months for twelve months, and have the interest taken out at each renewal in advance. It may reasonably be supposed that a consideration of the convenience and the saving of trouble to the borrower by making long time paper, and paying interest in advance, and the fact that this was held in other States not to be usurious, under laws similar to our own upon the subject of usury, influenced the legislature to provide that this might be done in discounting any commercial paper.

Commercial paper is defined to be "bills of exchange, promissory notes, bank checks and other negotiable instruments for the payment of money which, by their form and on their face, purport to be such instruments as are by the law merchant recognized as falling under the designation of commercial paper." Black's Law Dictionary, 226, "Commercial Paper." The note in this case falls within this definition, and within the above act of the legislature.

In discussing the question whether it is usurious to take in advance the highest legal rate of interest in discounting commercial paper, Judge Brewer said, in *Tholen* v. *Duffy*, 7 Kas. 408: "It seems difficult upon principle to sustain such a transaction. But in cases where note or bill is given, it is supported by such an overwhelming current of decision, and is a matter of such universal practice that it may well be considered as engrafted upon the law as a settled rule." And he added: "It was so settled before the passage of our interest law; and if the legislature had intended to change this rule of construction, such intention would have been plainly expressed." The same may be said substantially in reference to the custom of discounting negotiable or commercial paper having one year to run by taking out the highest legal rate of interest in advance, as affected by our constitution. The custom was well established before our present constitution was adopted.

It will be observed that some of the cases cited in *Vahlberg* v. *Keaton* to sustain the position that it is not usury to take out in advance the highest legal rate of interest on discounting three months paper equally sustain the position that it does not constitute usury to so discount commercial paper having six months or a year to run.

The only question decided in *Hogan* v. *Hensley*, 22 Ark. 413, was that a bond given to an internal improvement commissioner contracting to pay interest at the rate of ten per cent. semi-annually in advance was not negotiable or commercial paper, and that the agreement was usurious and void. This was the question in that case. The case at bar is entirely different, for there can be no dispute that the note in this case is negotiable paper governed by the law merchant.

The rule laid down in the American and English cases is that there must be a corrupt agreement by some

device or shift to take or reserve a greater rate of interest than is allowed by law, and that payment or receipt of usurious interest is *prima facie* evidence of a corrupt agreement.     *N. Y. Firemen Ins. Co.* v. *Ely*, 2 Cow. 678.

The note in this case was drawn by the appellee, or, at her instance, by her attorney, payable twelve months after date, to bear interest at the rate of ten per cent. per annum after maturity only, and was presented to the bank for discount, and was discounted by the bank, for her convenience, by taking out the highest legal rate of interest in advance.

We find that there is no evidence of a corrupt agreement in this case; that the transaction was in accord with a custom well established before our constitution was adopted, and with the act of the legislature.   We therefore hold that the taking or reserving of the highest legal rate of interest in advance on negotiable paper having twelve months to run is not usurious.

The decree in this case is reversed, and the cause is remanded to the circuit court, with directions to enter a decree for the foreclosure of the mortgage.

BATTLE, J., (dissenting).   The practice of discounting bills or notes by deducting from their face the highest rate of interest allowed by law for the whole time which must expire before they become due is undoubtedly usurious, in the strict sense of the word; for the lender receives interest on the whole amount of the principal for the use of only a part.   But this practice, says Mr. Parsons, in his work on Contracts, "began with our banks, and was soon so firmly established that it was sanctioned by the courts almost of necessity."   It was allowed and tolerated by the courts for the benefit of trade, and was confined to such paper as will, and usually does, circulate in the course of trade.

"In *Marsh* v. *Martindale* (3 Bos. & Pull. 158), Lord Alvanley expressly admits this to be the established law in relation to the negotiation of bills of exchange made in the usual course of trade ; but he held the transaction in that case to be usurious, principally because the bill discounted was a bill *at three years*. He says : 'The jury were impressed with a notion that a bill at three years was such a bill as no reputable man would discount; though it was said that some East India bills *at two years* had been discounted. Indeed, Lord Chief Justice Eyre seems to have thought that *the length of the date of a bill* was sufficient to afford a presumption that the discount was intended as a cover for a loan. And if we consider the effect of discounting bills at very long dates, the strength of this presumption will be manifest ; for, if the practice be carried to a great length, the interest will annihilate the principal.'"

After a short review of the English cases in *N. Y. Firemen Ins. Co.* v. *Ely*, 2 Cow. 703, Mr. Justice Sutherland said : "The principle to be extracted from these cases, and from a variety of others which might be cited in confirmation of them, I hold to be this : that the taking of interest in advance is allowed for the benefit of trade, although, by allowing it, more than the legal rate of interest is, in fact, taken ; that, being for the benefit of trade, the instrument discounted, or upon which the interest is taken in advance, must be such as *will*, and usually does, circulate or pass in the course of trade. It must, therefore, be a negotiable instrument, and payable at no very distant day ; for, without these qualities, it will not circulate in the course of trade. Under these limitations, the taking of interest in advance, either by a bank, or incorporated company without banking powers, or an individual, is not usurious."

In *Vahlberg* v. *Keaton*, 51 Ark. 541, this court said : "As the American States have adopted the English

statute as a model, so the American courts have adopted the construction given it by English courts. So we find the statement that 'the courts uniformly hold, at the present day, that the interest for ordinary paper having the usual time to run, such as is the custom of banks, may be taken in advance by way of discount, and not subject the paper to the taint of usury.' "

It is obvious that the right to take interest in advance can be exercised to such an extent that any amount of excessive interest may be collected, and our usury laws will cease to be a protection to the necessitous borrower. Thus, if A discounts the note of B for $2500, payable at ten years, by taking ten per cent. per annum interest in advance for the whole time the note has to run, he would take the whole of the $2500, and B would not receive a dollar, and A would have his note. There must be some limit to the right. Where shall it be? It seems to me it should be confined within the limits it existed when first sanctioned by the courts—that is to say, to such short time paper as will, and usually does, circulate or pass in the course of trade, according to the long established custom of banks. It should not be extended further than it did when the courts, constrained by the necessities of trade, first sanctioned it. In speaking of it, Mr. Parsons says: "There seems to be a strong disposition to limit this practice to short paper, or at least not to apply it to long loans or discounts." 3 Pars. Cont. *131. There is no valid reason for extending it further. *Newell* v. *Bank of Somerset*, 12 Bush, 57. We should keep within the limits of the rule established by *Vahlberg* v. *Keaton*, 51 Ark. *supra*. See *Smith* v. *Parsons*, 57 N. W. 311.

I think the note and mortgage in question are usurious and void.

Riddick, J., concurs with me in this opinion.