CITIZENS' BANK *v.* MURPHY.

Opinion delivered May 13, 1907.

1. USURY—DEFINITION.—To constitute usury, there must be an agreement on the part of the lender to receive, and on the part of the borrower to give, for the use of money a greater rate of interest than ten per cent. (Page 35.)

2. SAME—BURDEN OF PROOF.—The burden of proving usury by clear and satisfactory evidence is upon him who sets it up. (Page 36.)

3. SAME—WHAT DOES NOT CONSTITUTE.—Where a borrower, doing business with a bank, agreed to pay the bank ten per cent. interest on the indebtedness, and subsequently turned over to the bank accounts and invoices to be collected and applied on the indebtedness, an agreement that the bank should charge one and one-half per cent. for handling such accounts and invoices, in addition to the ten per cent. interest, already provided for, was not usurious. (Pgae 36.)

Appeal from Union Chancery Court; *Emon O. Mahoney,* Chancellor; reversed.

### STATEMENT BY THE COURT.

On the 4th of June, 1904, Guy Murphy was appointed receiver of the El Dorado Lumber & Planing Mill Company, a corporation organized under the laws of Arkansas. The issue in this case arose out of a recommendation by the receiver in his report to the court that the claim of the Citizens' Bank, appellant, which had been presented to him for allowance and payment, and which he had disallowed, be subjected to judicial examination, and that the bank be directed to appear on a certain day of the chancery court and present evidence to support its claim. The chancery court approved and adopted this part of the receiver's report, and ordered appellant to appear and show cause why the action of the receiver rejecting its claim on account of usury should not be approved. Accordingly the appellant bank responded, denying that the amount presented by it was tainted with usury and denying that any greater rate of interest was charged than ten per cent., and alleging that J. H. Walsh, the manager of the El Dorado Lumber & Planing Mill Company, agreed to allow one and one-half per cent. commissions on all invoices handled by the Citizens' Bank for said company. That this was a separate contract and for separate services. They allege that the claim was filed in proper time, and ask that the claim be allowed together with their cost.

The testimony was thus directed to the issue of usury, and it was substantially as follows: I. F. Price, who was cashier of the appellant bank at the time the transactions resulting in the account presented took place, testified:

"That the account which he exhibited is a statement of the indebtedness of the El Dorado Lumber & Planing Mill Company to the Citizens' Bank of Junction City. That it is based

upon certain notes due the bank and certain overdrafts and the interest figured on both notes and overdrafts as listed to the date of the statement, September 30th, 1904. The first item is an overdraft, as shown by the books of the bank, the second item is the interest on the overdraft since April 12th, 1904. That the interest on the overdraft was figured at ten per cent. A charge ticket, amounting to $375.63, dated May 25, 1904, is introduced and read by the witness, the same being a charge of one and one-half per cent. on the notes and invoices." And the witness continued: "Mr. Walsh was manager of the El Dorado Lumber & Planing Mill Company, and he agreed that they would pay ten per cent. for the use of the money furnished the company by the bank, and, in addition to the regular rate of interest, he agreed to pay one and one-half per cent. commission for collecting the notes and invoices, and this was merely a charge for trouble. There was no other amount agreed upon except the ten per cent. interest when we made the deal with Mr. Walsh. Afterwards, when he found he had these invoices and other matters to collect, he, of his own accord, agreed to pay one and one-half per cent. for our time and trouble in collecting these invoices. This agreement was entirely separate and distinct from the contract under which we borrowed the money, and they had no connection with each other at all. We never loaned them any money or agreed to loan them any money for any greater rate than ten per cent. interest. The consideration we were to give for this one and one-half per cent. was our trouble and expense in handling these invoices in the way we did. The overdraft did not enter into that arrangement in any way. Mr. Walsh stated to us that in the general way of handling his lumber business he would have to allow his customers a cash discount on all invoices of two per cent., and he stated that he could afford to allow us one and one-half per cent. for handling these invoices. He figured that it would cost him less to handle his lumber business in this way and pay his lumber bills than in the regular way, and allow two per cent. off. It took up a whole lot of the cashier's time in handling this business. Besides we had to pay postage on all invoices we forwarded for the mill. All the original invoices

were delivered to us by Mr. Walsh and forwarded to us by his customers."

The witness described his method of keeping the books showing the transactions as follows: "When I received the invoice and note from the mill, I would credit the El Dorado Lumber & Planing Mill Company with the amount of the invoice, the amount of the note you might say, and at the same time it was his custom to send a check in the same envelope, payable to the Scotland Lumber Company, for the same amount. I would credit the Scotland Lumber Company with the check and charge the check to the El Dorado Lumber & Planing Mill Company. I would credit the El Dorado Lumber & Planing Mill Company with the amount of the note and charge the note to Bills Receivable. When the remittance was received on these invoices, I would credit the El Dorado Lumber & Planing Mill Company with the amount of the remittance, and figure the interest on the note to the date of the receipt of remittance, and charge the note and interest to the El Dorado Lumber & Planing Mill Company, and give them credit for the amount of remittance received. The difference between the amount advanced by us on these invoices and the amount remitted to us by customers helped us to make the overdraft. The notes were canceled at the time I charged them back to the El Dorado Lumber & Planing Mill Company, except after the receiver was appointed; then I canceled the notes as settlements were received and kept them on record after they were canceled, and they were afterwards turned over to the receiver." Witness further testified that the bank did not get one and one-half per cent. from other similar concerns when they had a balance on the bank's books. The bank did not get one and one-half per cent. of all invoices. Witness did not know how far back the charge of one and one-half per cent., represented by slip in statement, showed. He did not figure the interest. The customary charge of the Citizens' Bank of Junction City for handling drafts with bill of lading attached was one-fourth of one per cent. The witness testified that the amount presented to the receiver was correct.

The court found that appellant entered into an agreement with the El Dorado Lumber & Planing Mill Company by which

the appellant was to advance the mill company the estimated net proceeds of lumber shipped by it, and that the invoices of shipments of lumber were to be deposited with the appellant as collateral security; that the amounts of the invoices were to be remitted by the consignees of the lumber to appellant bank, and credited by it upon the advances it had made the Mill Company; that it was then and there agreed by appellant and the Mill Company that the latter should pay the former interest upon the advances made at the rate of ten per cent. per annum, and in addition to that one and one-half per cent. of the face value of the invoices as commissions. The court found that the commissions of one and one-half per cent. on the face of the in · voices were in reality a charge for the use of the money advanced by the bank, and was so intended at the time. The court upon these findings entered a decree approving the action of the receiver in not allowing appellant's claim, and declared said account void for usury. This appeal by the bank followed.

*Smead & Powell* and *Marsh & Flenniken,* for appellant.

To constitute usury, there must be a corrupt agreement on the part of one to receive, and on the part of the other to pay, a greater rate of interest than the law allows. 27 Am. & Eng Enc. of L. 920; *id.* 924, 925; 54 Ark. 566. Usury is never inferred if the opposite conclusion can be reached. All presumptions are against the contract being usurious, and the burden of proving usury is upon the party who pleads it. 63 Ark. 162; 57 Ark. 251; 25 Ark. 191; *Id.* 253; 59 Ark. 366; 65 Ark. 316; 62 Ark. 491.

*R. L. Floyd,* for appellee.

WOOD, J., (after stating the facts.) The court erred in its findings and decree. As we view the evidence, the charge of one and one-half per cent. commissions was indeed a charge or commission made by the bank against the Mill Company for handling the latter's accounts and invoices in the manner indicated in the statement of facts. The proof tends to show that this agreement to pay commission for the trouble the bank had in handling and collecting the Mill Company's accounts was a separate and distinct charge from the amount agreed to be paid for the advancement of money by appellant. It was

not a charge for the use or forbearance of money. To constitute usury, there must be an agreement on the part of the lender to receive and on the part of the borrower to give for the use of money a greater rate of interest than ten per cent. *Scruggs* v. *Scottish Mortgage Co.,* 54 Ark. 566.

The appellee having set up usury, the burden was upon him to show it. *Holt* v. *Kirby,* 57 Ark. 251.

We are of the opinion that the evidence fails to show a corrupt agreement for usury. The evidence of any shift or device to cover usury is wanting.

The evidence to establish usurious contracts should be clear and satisfactory; for, when shown, they forfeit the whole debt, principal as well as interest. "Usury will not be inferred where from the circumstances the opposite conclusion can be reasonably and fairly reached." *First Natl. Bank* v. *Waddell,* 74 Ark. 241; *Leonhard* v. *Flood,* 68 Ark. 162.

If the charge of one and one-half per cent. here was commissions, as the court found, and was for the service and trouble of keeping the account for the Mill Company, as the uncontroverted proof tends to show, then it was not a usurious charge, although it was in addition to a charge of ten per cent. which appellant had heretofore exacted of the Mill Company for the use of money advanced it. The decree is reversed and remanded with directions to the chancery court to enter a decree allowing the claim of the appellant, and for other proceedings not inconsistent with this opinion.