WINSTON *v.* PERSONAL FINANCE COMPANY OF PINE BLUFF, INC.

4-9760              249 S. W. 2d 315

Opinion delivered May 19, 1952.

*Sam M. Levine,* for appellant.

*Bailey & Warren* and *Lawrence Blackwell,* for appellee.

*Oscar Fendler, J. W. Barron, Wright, Harrison, Lindsey & Upton, Ed I. McKinley* and *G. L. Grant,* AMICI CURIAE.

ED. F. McFADDIN, Justice. This case presents the issue of *usury* in a transaction based entirely on a loan of money, and without any element of a credit price connected with a sale.

Appellant, Winston (sometimes hereinafter called "borrower"), is an individual who lives several miles from Pine Bluff. Appellee, Personal Finance Company (sometimes hereinafter called "Personal" or "lender"), is a corporation registered and licensed by the State Bank Commission, under Act 203 of 1951, which Act is officially called the "Arkansas Installment Loan Law," but in common parlance is referred to as the "Small Loans Act." Appellee has a place of business in Pine Bluff, and employs several persons. On October 4, 1951, Winston applied to Personal for a loan. The manager of Personal talked to Winston, and went with him in an automobile to Winston's home to inspect the household furniture which Winston offered as security. Then Winston and the manager returned to Personal's office in Pine Bluff, where investigation was made as to Winston's credit. The loan was consummated the same day,

582

and Winston executed the note and mortgage prepared by employees of Personal.

The note was dated October 4, 1951, for the face amount of $108, and was payable $9.00 per month for twelve months, beginning November 4, 1951, with interest from maturity on each monthly installment. Winston received only $95.04. The remaining $12.96 (difference between the cash received and the face amount of the note) is explained by Personal as follows:

Interest via discount at 5%........................................................$ 5.40
Service charges ........................................................................ 7.56
                                                                                    ─────────
                                                                                    $12.96

The "service charges" are attempted to be justified by these "services":

(a) Paid by Personal to one of its employees for use of her car by Personal's manager and Winston in their trip to inspect Winstons' household furniture ...................................................................$3.30

(b) Paid Retail Credit Bureau for credit report on Winston ..................................................................................$ .50

(c) Services of the manager and other employees of Personal in "investigation, appraisal and listing household furniture," and preparing note and mortgage ............................................................$ 3.76

Winston filed suit in the Chancery Court to have the loan declared usurious. Personal denied all allegations of usury, and claimed that said Act 203 of 1951 (hereinafter sometimes referred to as "Act 203") made legal the interest and service charges. At the conclusion of the trial, the Chancery Court dismissed Winston's complaint, and this appeal followed.

I. *The Constitutional Provision Concerning Usury.* Article 19, § 13 of our Arkansas Constitution says:

"All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and

interest, and the General Assembly shall prohibit the same by law;"[1]

So, at the outset, we emphasize (a) that we have a Constitutional provision as to usury; (b) that no Legislative enactment can impinge on such provision; and (c) that each case should be measured in the light of the Constitutional provision and the cases construing it. With this in mind, we examine the transaction in issue.

(1) Winston received in cash ..............................................$95.04

(2) By reason of two court decisions shortly to be mentioned,[2] Winston could be legally charged for the automobile in which he went with Personal's manager to inspect the furniture...... 3.30

_____

$98.34

The difference between $108 (the face amount of the note) and the $98.34 (for which Winston could be legally charged) is $9.66, which represents the amount that Personal received for interest, service charges, etc., for the loan of the money. With the note payable at the rate of $9.00 per month, calculation discloses that Personal was receiving interest of 16.528%.[3] This is usury. Unless enough of the $9.66 is legally allowable for items other than interest, the loan falls into the Constitutional inhibition. We will notice that $9.66 after we first discuss the inspection fee of $3.30 previously mentioned.

We are allowing this inspection fee in this case because of the holdings of this court in *Mathews* v. *Georgia State Savings Assn.*, 132 Ark. 219, 200 S. W. 130, 21 A. L. R. 789, and *Lyttle* v. *Matthews*, 193 Ark. 849, 103 S. W. 2d 47. In *Matthews* v. *Georgia State, supra,* the statement of facts recites that $7.50 was charged the borrower for a part of the railroad fare of the lender's

_____

[1] In Volume 6, page 26 *et seq.* of the Arkansas Law Review (Winter 1951-2) there is an article entitled: "A Partial Survey of Usury Laws in Arkansas"; and many of our cases are reviewed in the said article.

[2] These two cases are *Matthews* v. *Georgia State Savings Association,* 132 Ark. 219, 200 S. W. 130, 21 A. L. R. 789; and *Lyttle* v. *Matthews,* 193 Ark. 849, 103 S. W. 2d 47.

[3] Here is the calculation:

agent on his trip to inspect the property. Even though the opinion did not discuss this item of $7.50, the detailing of the matter in the statement of facts, and the failure to discuss it in the opinion, constitutes approval by inference of the item charged. In *Lyttle* v. *Matthews*,

| Cash Received | | $95.04 | |
| Inspection Fee | | 3.30 | $98.34 |
| Interest and "Service Charge" | | | 9.66 |
| Non-Interest Bearing Note due $9.00 per month | | | $108.00 |

| Balance at Beginning of Month | Principal Balance | Interest on Balance of Principal for Month @ 16.528% | Balance applied to Principal |
|---|---|---|---|
| 1st Month | $108.00 | $1.49 | $7.51 |
| 2nd " | 99.00 | 1.36 | 7.64 |
| 3rd " | 90.00 | 1.24 | 7.76 |
| 4th " | 81.00 | 1.12 | 7.88 |
| 5th " | 72.00 | .99 | 8.01 |
| 6th " | 63.00 | .87 | 8.13 |
| 7th " | 54.00 | .74 | 8.26 |
| 8th " | 45.00 | .62 | 8.38 |
| 9th " | 36.00 | .50 | 8.50 |
| 10th " | 27.00 | .37 | 8.63 |
| 11th " | 18.00 | .24 | 8.76 |
| 12th " | 9.00 | .12 | 8.88 |
| | | $9.66 | $98.34 |

*supra,* the opinion recites that $37.50 was charged against the borrower as the fee for having the lender's agent inspect the property. Thus these two cases seem to sanction the legality of the lender charging the borrower for the expenses of the lender's agent in inspecting the property; and we are, therefore, allowing the $3.30 expense for such item in this case. But a caveat is hereby given that in litigation concerning loans made subsequent to the effective date of this opinion, this court will feel free to consider anew this question of travel expenses and inspection fees which the lender may charge the borrower and in which the charged items go to pay the expenses of the agents or employees of the lender. The question will be reconsidered in the light of the Constitutional inhibition against usury.

Now, we revert to the $9.66 charged for interest and service charges, as previously mentioned. The lender sought to charge the borrower for "(b) Paid Retail

Credit Bureau for credit report, $.50'' and ''(c) For services of the manager and other employees of Personal in 'investigation, appraisal and listing household furniture,' and preparing note and mortgage, $3.76.'' We will refer to these as charge items ''b'' and ''c''. The payment for the credit report was something that Personal did for its own benefit, and in no sense for the benefit of Winston. The employees who rendered the services charged in item ''c'' were each on a salary, so that whatever Personal charged Winston was only a part of Personal's overhead expense in doing business. So, these charges ''b'' and ''c'' were, in reality, nothing more or less than interest charges, because interest, as stated in Bouvier's Law Dictionary is ''The compensation which is paid by the borrower of money to the lender for its use, and, generally, by a debtor to his creditor in recompense for his detention of the debt.''

All of the $9.66 that Personal charged in this case was, in reality, compensation demanded by Personal for its own use, and agreed to by Winston, in order that Winston might obtain the use of $95.04 of Personal's money. The items ''b'' and ''c'' were the ordinary incidental expenses incurred by Personal in the course of its business. They were not items paid by Personal to a third person for the benefit of Winston. They are not like the cost of (1) an abstract paid to a third person, or (2) a title opinion paid a lawyer, or (3) recording fees paid an official, or (4) insurance premiums paid a third party. These four numbered items just mentioned may be legal and valid charges when they are paid to a third party. We have upheld such fees in a number of cases,[4] but the facts in each of those cases were different—in a most important particular—from those in the case at bar; because here, the fees, or ''service charges'', were made by Personal to cover its own overhead costs and therefore were, in all essentials, interest on the money loaned. When the ''service charges'' in the case at bar are put in the interest column, where they justly belong, then

[4] Some of these cases are *Shattuck* v. *Byford*, 62 Ark. 431, 35 S. W. 1107; *Sidway* v. *Harris*, 66 Ark. 387, 50 S. W. 1002; *Citizens' Bank* v. *Murphy*, 83 Ark. 31, 102 S. W. 697; and *Brown* v. *Fretz*, 189 Ark. 411, 72 S. W. 2d 765.

there is no way for Personal to avoid the resulting conclusion that the loan was usurious.

Personal seeks to make applicable here the "discount cases", such as *Vahlberg* v. *Keaton,* 51 Ark. 534, 11 S. W. 878, 4 L. R. A. 462, and *Bank of Newport* v. *Cook,* 60 Ark. 288, 30 S. W. 35, 29 L. R. A. 761. But these cases give Personal no real consolation, because, even if applicable, they would not reduce the interest to less than 10%. In *Rose* v. *Hall,* 171 Ark. 529, 284 S. W. 776, we held that when the monthly payments exceeded the interest due to such payment, then the excess of such monthly payment must be applied to the principal, in accordance with the Statute (now § 68-606 Ark. Stats.). In applying that holding to the facts in the case at bar, it is apparent that the so-called "discount cases", *supra,* and the Statute (now § 68-604 Ark. Stats.), are of no avail to Personal, because the first payment on the loan in this case was due one month after the loan was made, and that payment so contracted to be made exceeded the interest that would be due for one month from the date of the note. So the "discount cases" could only mean that the interest could be discounted to the date of the first monthly payment. Furthermore, there was no stock subscription or investment certificate contracted to be purchased by Winston in the case at bar, as was the situation in *Simpson* v. *Smith Savings Society,* 178 Ark. 921, 12 S. W. 2d 890. But even such investment certificates or stock subscriptions cannot be used as a cloak of usury. See *Commercial Credit Plan, Inc.* v. *Chandler,* 218 Ark. 966, 239 S. W. 2d 1009.

With the items "b" and "c" (that is, the retail credit report, and time and services for closing the loan) placed in the interest column, it is clear that Personal has contracted for usury in the case at bar, and has brought itself within the Constitutional prohibition, and must suffer the consequences of its own acts. In *Sparks* v. *Robinson,* 66 Ark. 460, 51 S. W. 460, Mr. Justice WOOD, in a decision which pierced through words used to cloak usury, said: "The law shells the covering, and extracts the kernel. Names amount to nothing when they fail to

designate the facts." So here the "service charge" is a mere shell to conceal the kernel of usury.

II. *The Arkansas Installment Loan Law.*[5] This is Act 203 of 1951, commonly called the "Small Loans Act"; and Personal seeks to justify its charges of the items "b" and "c", *supra,* by relying on said Act 203.[6] Able briefs have been filed by the appellee and some of the *amici curiae,* seeking to justify the Act as constitutional. A brief by one *amicus curiae* seeks to have the Act declared unconstitutional in its entirety. In the briefs favorable to the Act, we are cited to decisions from courts of other states[7] upholding small loans acts in the face of constitutional language similar in some respects to our own constitutional provision, which is Art. 19, § 13, as previously copied. Furthermore, we are cited to many Annotations in American law Reports on various phases of usury.[8] But regardless of how persuasive may be opinions from our sister states, nevertheless we have in our State our own Constitution, and our own decisions, which must serve as the lodestar to guide our course, and we must refuse to allow arguments, however plausible, to lead us away from the plain wording and spirit of our Constitution. In *German Bank* v. *Deshon,* 41 Ark. 331, Mr. Justice BATTLE, in holding a loan to be usurious, used this language, which announces the duty of the courts in a case like this:

[5] Related questions concerning this Law are discussed in the opinion in *Strickler* v. *State Auto Finance Co.* (No. 9791). See *ante,* p. 565, 249 S. W. 2d 307.

[6] In the Arkansas Law Review, Vol. 6, p. 34, *et seq.,* in the article: "A Partial Survey of the Usury Laws of Arkansas," there is a discussion of this Act.

[7] Some of the cases so cited are *Ex Parte Fuller,* 15 Cal. 2d 425, 102 Pac. 2d 321; *Beneficial Loan Society* v. *Haight,* 215 Cal. 506, 11 Pac. 2d 857; *Family Loan Co.* v. *Hickerson,* 168 Tenn. 36, 73 S. W. 2d 694, 94 A. L. R. 664; *Williams* v. *Personal Finance Co.,* 172 Tenn. 69, 109 S. W. 2d 1166; *Personal Finance Co.* v. *Hammack,* 163 Tenn. 641, 45 S. W. 2d 528; and *Penziner* v. *Western American Finance Co.,* 10 Calif. 2d 160, 74 Pac. 2d 252. In connection with the California cases, it is interesting to note that California first declared a small loans act unconstitutional, and then the constitution was amended to allow such an act; so that the final California decisions were after a constitutional amendment which allowed a small loans act. This is all explained in *Ex Parte Fuller, supra.*

[8] Some of these Annotations are 21 A. L. R. 797; 53 A. L. R. 743; 63 A. L. R. 823; 69 A. L. R. 581; 94 A. L. R. 669; 105 A. L. R. 795; and 143 A. L. R. 1323.

"The thirteenth section of article nineteen of the constitution of this State declares that '*all contracts* for a greater rate of interest than ten per centum per annum shall be void as to principal and interest.' This section is clear and unambiguous. With the wisdom and policy of it the courts have nothing to do. It is their duty to carry it into effect according to its true intent, to be gathered from its own words, without regard to the hardships incident to the faithful execution of such laws."

We unhesitatingly declare that any provisions in the said Act 203 which attempt, in any guise whatsoever, to permit an evasion of the Constitution, are null and void. It is said that § 27 of the Act 203 allows the charges here claimed.[9] It is clear that § 34 impliedly recognizes that a registrant (that is one licensed by the State Bank Commissioner under the Act) is authorized to collect from the borrower more than a non-registered person can collect.[10] Our answer to Personal's claim of immunity by reason of said Act 203 is, that the Constitution fixes interest at a maximum rate of 10%, and any charge for the use of money above that amount is usurious. We hold that the Legislature cannot authorize the State Bank

[9] Section 27 provides, *inter alia*, that a registrant under the Act may make loans up to $2,500 for a term of 18 months or less, and may collect interest charges and fees and require fulfillment of conditions in accordance with the following sub-sections "a" to "h," inclusive:

(a) Charge interest or discount in advance at a rate not to exceed 5% of the principal amount, payable in equal installments over one year.

(b) Charge "for services rendered or to be rendered, and expenses incurred or to be incurred, in connection with the said loan or the security thereto, such as investigating the moral and financial standing of the borrower, investigating the security . . . an amount not in excess of 7% . . . of $300 . . . ," 5% on the next $300, and 4% on any part in excess of $600.

(c) If charges in "b" do not bear a fair relation to services rendered, then charges in "b" may be scaled down.

(d) Require repayment in periodic installments.

(e) Collect a charge of 5% for items five days delinquent.

(f) Collect from the borrower premiums actually incurred for life or health insurance.

(g) Collect fees for acknowledging and filing the mortgage, and attorney's fee for title services.

(h) Collect court costs incident to a default.

[10] Section 34 says of a registrant who makes a loan of more than $2,500: "He shall not be entitled to charge, contract for, or receive, either directly or indirectly, upon any such loan or aggregate of such loans, or upon any part thereof, interest charges or fees in excess of that which he would be permitted by law to charge if he were not registered hereunder."

Commissioner to grant registrants under Act 203 any license to violate the Constitution. Thus, insofar as the said § § 27 and 34 of the said Act 203 seek to allow interest to be charged in excess of the Constitutional provision, such sections must fall as unconstitutional.

In the briefs of some of the *amici curiae,* it is claimed that the general welfare of poor people will be protected by upholding § § 27 and 34 of said Act 203. We hold that the welfare of all people, the poor in particular, is best served by court decisions which uphold the Constitution as the bedrock of the rights and protections of people, rather than by court decisions which, on the ground of expediency or welfare, allow the Constitution to be violated or evaded. We stand on the Constitution.

We are asked to pass on the constitutionality of all of the provisions of the said Act 203, but there is no necessity to consider in this case any part of the Act except the sections mentioned, and it is a well settled rule that no constitutional issues are decided except those necessary to a decision in the specific case at hand. *Porter* v. *Waterman,* 77 Ark. 383, 91 S. W. 754; *Honea* v. *Federal Land Bank,* 187 Ark. 619, 61 S. W. 2d 436; and *McLeod* v. *Dilworth,* 205 Ark. 780, 171 S. W. 2d 62.[11]

We conclude that the loan in this case is usurious. Therefore, the decree of the Chancery Court is reversed and the cause remanded, with directions to enter a decree awarding Winston the relief he prayed.

Mr. Justice WARD (concurring) : I concur in the result in this case; but (1) I do not approve of the caveat, and (2) I think the fifty cents, paid the Retail Credit Bureau for the report, is permissible.

Mr. Justice GEORGE ROSE SMITH not participating.

[11] Other cases to the same effect are collected in West's Arkansas **Digest,** "Constitutional Law," § 46.